IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Case No.   06-cv-00272-LTB-MEH

LAWRENCE L. MORROW,

      Plaintiffs,

v.

COUNTRYWIDE HOME LOANS, INC., and
BANK OF NEW YORK,

      Defendants.

_____

ORDER
_____

      The plaintiff, Lawrence L. Morrow, obtained from Countrywide Home Loans, Inc. ("Countrywide") a loan for the purchase of a residence, secured by a mortgage.  After failing to make any of the scheduled payments, Mr. Morrow filed this suit seeking, *inter alia*, rescission of the loan note.  Countrywide and Bank of New York ("BNY"), the holder of the loan, move for dismissal or, alternatively, summary judgment.  Mr. Morrow did not within the time allowed file a response.  *See* D.C.Colo.L.Civ.R. 56.1.  Oral arguments would not materially aid resolution of the motion, which, for the reasons stated below, I GRANT.

      The record is compendious and can succinctly be summarized.  The note commemorating the loan, bearing Mr. Morrow's signature, begins, "In return for a loan that I have received, I promise to pay U.S. $ 218,400.00 (this amount is called 'Principal'), plus interest, to the order of the Lender."  It sets forth the interest rate – 7.8 per cent annually; the required schedule of repayment; Mr. Morrow's prepayment rights; and provisions for default, late fees, and notices.

The mortgage deed of trust, also bearing Mr. Morrow's signature, refers to the note, reiterates several of its terms, and additionally identifies, *inter alia*, the lender's rights of acceleration of the loan and foreclosure and sale of the property, and Mr. Morrow's rights to receive notice of and cure any default.

A truth in lending disclosure statement, which Mr. Morrow signed on the same date as the note and mortgage, reveals the cost of the loan as a yearly percentage rate, the total amount the credit would cost, the amount financed, the total payments, the times when payments were due, the terms of any prepayment, and an itemization of closing and loan costs. The document refers Mr. Morrow to the contract documents for additional terms.

Mr. Morrow also signed a completed United States Department of Housing and Urban Development Settlement Statement ("HUD-1"). The HUD-1 shows that Countrywide at closing made to the seller of the property on Mr. Morrow's behalf payments of $218,400 and $54,600 and that Mr. Morrow made no cash payments at that time. The document discloses all of the costs of closing charged to Mr. Morrow, including origination and appraisal fees, insurance premiums, recording charges, *per diem* interest payable to Countrywide for its second mortgage, and other charges.

On October 3, 2005, after Mr. Morrow failed to make any scheduled payment and defaulted on the loan, Countrywide sent to him a notice of default and acceleration. The document notified Mr. Morrow: that he had the right to cure the default; in what manner he might achieve restoration; that acceleration and foreclosure would follow failure to cure by November 2, 2005; that his right to cure would survive the initiation of foreclosure proceedings; and that Countrywide was amenable to compromise, including establishing a repayment plan or permitting

Mr. Morrow's sale of the home. The document advised Mr. Morrow to contact Countrywide immediately.

Mr. Morrow did not cure the default and Countrywide foreclosed on the property. On February 16, 2006, Mr. Morrow initiated this lawsuit. A state court issued an order authorizing the sale on February 21, 2006. Countrywide bought the property at the sale of the Public Trustee of Boulder County, Colorado ("Trustee"). Mr. Morrow did not redeem the property and the Trustee issued a deed to Countrywide.

I construe Mr. Morrow's *pro se* complaint liberally, but do not assume the role of advocate on Mr. Morrow's behalf. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Nor does Mr. Morrow's status as a *pro se* plaintiff relieve him of his obligation under Fed. R. Civ. P. 56 to establish the existence of an element essential to his case on which he would bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Overton v. United States*, 925 F.2d 1282, 1285 (10th Cir. 1991).

Some discrete allegations are discernible in Mr. Morrow's desultory complaint. He alleges that: the disclosure of his right to rescind was contained within other disclosures at closing; interest disclosures were similarly embedded; he did not receive statements required under 15 U.S.C. §§ 1638(a)(2)(B), (a)(11), & (a)(12) and 1639(a)(1)(A) & (B); disclosure statements presented at closing failed properly to designate finance charges, periodic rates, and annual percentage rates; the acceleration notice failed to disclose the amounts of charges other than finance charges and the date by which the outstanding balance need have been paid. He alleges that Countrywide loaned him credit, not money, which loan exceeded Countrywide's corporate powers. He claims that he alone provided consideration at closing. He asserts that

3

Countrywide committed usury by charging interest without incurring any liability. Construed liberally, the complaint can be read to state claims for misrepresentation, rescission, usury, unjust enrichment, and violation of federal real estate disclosure laws.

Mr. Morrow's claim for rescission fails under Fed. R. Civ. P. 12(b)(1). Under the *Rooker-Feldman* doctrine, I have no jurisdiction to hear appeals from final judgments of state courts. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). Because 28 U.S.C. § 1257 grants appellate jurisdiction over state court judgments to the Supreme Court, it follows that no court of the United States other than the Supreme Court may entertain a proceeding to reverse or modify such judgments. *Id*.

Nothing in the record indicates that the state court, which authorized the trustee sale, considered Mr. Morrow's rescission claim. Nevertheless, I agree with Judge Blackburn's determination in *Rohr v. Home Loans Corp.*, 2005 WL 2027684 (D. Colo. 2005) (unpublished) that rescission of a mortgage loan after an authorized foreclosure sale would effectively undo the state court judgment in contravention of *Rooker* and *Feldman*. *See*, *Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144, 1148-1149 (10th Cir. 2004).

All of the other claims fail as a matter of law under Rule 56. Because Mr. Morrow's loan was a residential mortgage transaction, he was not entitled to notice of a right to rescind under 15 U.S.C. § 1635. 15 U.S.C. § 1635(e)(1); *Betancourt v. Countrywide Home Loans, Inc.*, 344 F. Supp. 2d 1253, 1260 (D. Colo. 2004). Contrary to Mr. Morrow's allegations, the record demonstrates beyond dispute that Coutrywide and BNY fulfilled all of their other disclosure obligations under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), the Real Estate

Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"), and TILA Regulation Z, 12 C.F.R. § 226.1 *et seq.*. The record also demonstrates that Countrywide loaned $273,000 for the purchase of Mr. Morrow's residential property, that Mr. Morrow was apprised of his repayment obligations and cure rights, and that he failed both to make any payments and to cure his default. No genuine issues of material fact appear and Countrywide and BNY are entitled to judgment as a matter of law.

I note that Mr. Morrow lists the Trustee among the parties in the caption of his Complaint. However, he does not list the Trustee among the defendants and makes no allegations in the Complaint that can be construed to state any claims against the Trustee.

Accordingly, it is ORDERED that:

1) the motion of Countrywide and BNY for dismissal or summary judgment [7] is GRANTED; and

2) all claims are DISMISSED and judgment shall enter for the defendants with costs.

Dated: June   7  , 2006, in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
Lewis T. Babcock, Chief Judge